GOSHORN, Judge.
Matthew Baxter and his wife, Cynthia, appeal from the summary final judgment entered in favor of Hog Valley Volunteer Fire Department, Inc. (Hog Valley) in a negligence action filed by the Baxters. The Bax-ters argue that the trial court erred in holding that Hog Valley was entitled to workers’ compensation immunity as a matter of law. We agree and reverse.

THE FACTS

Matthew Baxter was a paid professional firefighter employed by Marion County. He was one of two Marion County firefighters assigned to work at the otherwise all volunteer Fort McCoy fire station. On August 30, 1990, a call came for the Fort McCoy firefighters to assist Hog Valley firefighters in fighting a structure fire. Baxter entered the burning building and was hit in the head by a blast of water which came from outside the building. The blast knocked off Baxter’s protective breathing gear, leaving him to inhale harmful substances and resulting in permanent injuries.
The Baxters filed suit against Hog Valley alleging that a member or members of Hog Valley were responsible for negligently directing the stream of water into the strue- *286 ture while Baxter was inside. Hog Valley responded by filing a motion for summary judgment, asserting that it was a Marion County employee, just like Baxter, and thus was entitled to immunity pursuant to the Workers’ Compensation Law.[1] The Baxters also sought a summary judgment on the issue of Hog Valley’s entitlement to workers’ compensation immunity. After a hearing, the trial court found that pursuant to the Workers’ Compensation Law definition of employee, Hog Valley volunteer firefighters were Marion County employees and thus, Hog Valley was immune from suit pursuant to subsection 440.11(1), Florida Statutes (1989).

THE LAW

Section 440.11(1) of the Workers’ Compensation Law provides that “[t]he same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer’s business and the injured employee is entitled to receive benefits under this chapter.” The Workers’ Compensation Law contains a broad definition of “employee.” § 440.02(12), Fla.Stat. (1989). The pertinent provision of the definition is subparagraph (12)(d)3., which excludes from the definition of “employee”:
3. A volunteer, except a volunteer worker for the state or a county, city, or other governmental entity. Notwithstanding the provisions of s. 440.26, a person who does not receive monetary remuneration for his services is presumed to be a volunteer unless there is substantial evidence that a valuable consideration was intended by both employer and employee. For purposes of this chapter, the term “volunteer” includes, but is not limited to:
a. Persons who serve in private nonprofit agencies and who receive no compensation other than expenses....

THE ISSUE

WHETHER HOG VALLEY IS A MARION COUNTY EMPLOYEE
Hog Valley is entitled to claim immunity from suit under the Workers’ Compensation Law, section 440.11(1), if, like Baxter, Hog Valley is an employee of Marion County. The controversy over Hog Valley’s status stems from the parties’ application of subpar-agraph 440.02(12)(d)3. to the facts.
The Baxters argue that Hog Valley volunteers volunteer to a private non-profit agency, the Hog Valley Volunteer Fire Department, Inc., not to Marion County, and thus Hog Valley volunteers are excluded from the definition of employee pursuant to subpara-graph 440.02(12)(d)3. They point to the deposition of John Lake, the deputy chief in charge of the Marion County Fire Department, wherein Lake himself distinguished between volunteers who work for Hog Valley and volunteers who volunteer directly to Marion County and who are supervised by Marion County.[2]
*287 The Baxters also look to the contract between Marion County and Hog Valley to support their position.[3] The contract states that paid employees (as opposed to volunteers who volunteer directly to Hog Valley) assigned to Hog Valley “shall be considered employees of the [MSTU] and shall be under the general personnel guidelines as adopted by Marion County, which shall be the same administrative codes, guidelines and policies as adopted by Marion County for County employees.” As the Baxters assert, had the MSTU and Hog Valley intended for Hog Valley volunteers to be considered as MSTU employees, the contract would have so specified. Instead, however, it was clearly spelled out that Marion County’s paid firefighters who were assigned to volunteer departments were to continue to be treated as Marion County employees, i.e., they did not lose their county employment status by virtue of their assignment to a volunteer fire department. The contract language supports the finding that a dichotomy in employment status exists between paid Marion County employees and volunteers to the individual volunteer fire departments.
Hog Valley argues that its volunteer firefighters were volunteers for the county and thus, under subparagraph 440.02(12)(d)3.’s language excepting county volunteers from the exclusion for volunteers generally, its volunteer firefighters were employees. It asserts that the language which excepted county volunteers is broad enough to include volunteers who assist the county through a nonprofit organization. Accordingly, Hog Valley contends, the exclusion of nonprofit agency volunteers from the definition of employee does not override the provision including county volunteers in the definition of employee.
We do not find Hog Valley’s argument persuasive. The volunteer firefighters volunteered to Hog Valley Volunteer Fire Department, Inc., a private nonprofit corporation, not to Marion County. The volunteers were not controlled or supervised by Marion County. In fact, Marion County did not even know who the volunteers were.
Hog Valley also relies on subparagraph 440.02(15)(b)3., Florida Statutes (1993) to argue that volunteers are employees of the governmental entity to which they provide service. This subparagraph provides in pertinent part:
(15)(a) “Employment,” subject to the other provisions of this chapter, means any service performed by an employee for the person employing him.
(b) “Employment” includes:
⅜ ⅜ ⅜ ⅜ ⅛: ⅜
3. Volunteer firefighters responding to or assisting with fire or medical emergencies whether or not the firefighters are on duty.
We reject Hog Valley’s contention. By its terms, paragraph 440.02(15)(a) makes the definition of employment “subject to the other provisions of this chapter.” Other provisions exclude volunteers to private nonprofit corporations from the definition of employee. See § 440.02(12)(d)3.a., Fla.Stat. (1989). We interpret the term “volunteer firefighters” as used in subparagraph (15)(b)3. as encompassing those volunteers who volunteer directly to Marion County, not volunteers to the nonprofit corporation which itself contracts to Marion County.
We find that the firefighters who volunteered to the Hog Valley Volunteer Fire Department, Inc. were not volunteers to Marion County. Under the statutory definitions found in the Workers’ Compensation Law, Hog Valley’s volunteers are not Marion *288 County employees. Accordingly, we hold that Hog Valley is not immune from liability under section 440.11.
REVERSED and REMANDED FOR FURTHER PROCEEDINGS.
PETERSON, C.J., and W. SHARP, J., concur.

. Hog Valley also asserted that it is an employee of Marion County under the common law definition of employee and was not an independent contractor as that term is defined in Cantor v. Cochran, 184 So.2d 173, 174 (Fla.1966). Hog Valley further argued, as an alternate theory, that it was Marion County’s borrowed servant and that an employer who borrows a worker assumes all liability for the activities of the borrowed servant. The facts simply do not support these two theories.

. Lake stated in his deposition that the volunteer fire departments in Marion County contracted with Marion County to provide fire protection services for specific areas in the county. The volunteer departments were given a budget to purchase equipment, and Marion County took a "hands off” approach to whatever fundraising the volunteer departments did. Training also was left to the individual departments as the cost of training was not covered by the Marion County budget. Marion County kept no records of Hog Valley volunteers, nor did it supervise any of the volunteer fire departments. Marion County did have a standard operating procedure manual which Hog Valley was supposed to follow; however, Hog Valley did not comply therewith and Marion County never pursued the matter.
Regarding worker's compensation coverage, Lake stated that a number of volunteer firemen banded together and formed the Marion County Firemen’s Association and received a bulk rate on their insurance. This Association did not include volunteers to Marion County, but rather was made up of the volunteers to the various non-profit volunteer departments. Although Marion County paid the premiums, its employees were not included under the same policy as the volunteers to the fire departments.
*287 The affidavit of L.A. Baker, risk manager in the Intergovernmental Risk Management Department of Marion County in 1990, states that at the time of the accident, Marion County was self-insured for worker's compensation coverage and "volunteers to the Hog Valley Volunteer Fire Department, Inc. were not eligible for coverage under the worker’s compensation benefit plan of Marion County.”

. The 1988 Fire Contract by which Hog Valley agreed to provide fire protection services to the unincorporated areas of Marion County was entered into between Hog Valley and a "Municipal Service Taxing Unit for Fire Protection, A/N/S Marion County...." It recites that the Board of County Commissioners of Marion County created the MSTU and acted as the governing body thereof. The 1988 version of the contract was in effect on the date of the accident.